# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 25, 2019         Decided August 21, 2020

No. 18-1124

INTERNATIONAL LONGSHORE & WAREHOUSE UNION,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

EAST BAY AUTOMOTIVE MACHINISTS LODGE NO. 1546,
ET AL.,
INTERVENORS

———

Consolidated with 18-1168

———

On Petition for Review and Cross-Application
for Enforcement of Orders of
the National Labor Relations Board

———

*Lindsay R. Nicholas* argued the cause for petitioner. With her on the briefs were *Eleanor Morton* and *Emily M. Maglio*.

*Gregoire Sauter*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Peter B. Robb*, General Counsel, *John W. Kyle*, Deputy

General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Usha Dheenan*, Supervisory Attorney.

*David A. Rosenfeld* was on the brief for intervenors East Bay Automotive Machinists Lodge No. 1546, et al. in support of respondent/cross-petitioner.

Before: GARLAND and KATSAS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.*

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: Under *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272 (1972), a successor employer inherits the collective-bargaining obligations of its predecessor only if the previously recognized bargaining unit remains appropriate under the successor. In determining whether the unit remains appropriate, the National Labor Relations Board ignores workplace changes caused by unfair labor practices of the successor. Here, the NLRB extended that rule to ignore changes caused by unfair labor practices of the predecessor. We hold that the Board did not adequately explain its decision.

I

This case arises from a longstanding dispute about which of two competing unions represents a group of several dozen

---

* The late Senior Circuit Judge Stephen F. Williams was a member of the panel at the time the case was argued and participated in its consideration before his death on August 7, 2020. Because he died before this opinion's issuance, his vote was not counted. *See Yovino v. Rizo*, 139 S. Ct. 706, 710 (2019). Judges Garland and Katsas have acted as a quorum with respect to this opinion and judgment. *See* 28 U.S.C. § 46(d).

mechanics who maintain and repair shipping equipment in the Port of Oakland, California. The unions are the International Association of Machinists and Aerospace Workers, AFL-CIO/CLC (Machinists) and the International Longshore and Warehouse Union (ILWU). As the mechanics came to work for different companies, two related controversies developed. One, centered around a change in employers that occurred in 2005, has been finally resolved by this Court. Another, centered around a change in employers that occurred in 2013, is directly at issue here.

A

Before 2005, the mechanics at issue worked for the Pacific Marine Maintenance Company, a contractor providing maintenance and repair services to the shipping company A.P. Moller-Maersk. At that time, the Machinists represented the mechanics under a collective-bargaining agreement covering non-crane mechanics employed by Pacific Marine at the Ports of Oakland and Tacoma, Washington.

In 2005, Maersk ended its contract with Pacific Marine and engaged the Pacific Crane Maintenance Company to provide maintenance and repair services for its Oakland and Tacoma shipping operations. As a result, Pacific Marine shut down and laid off the mechanics. Pacific Crane immediately rehired most of them, but it refused to recognize the Machinists as their bargaining representative. Instead, it recognized ILWU under a collective-bargaining agreement encompassing a much larger unit of some 15,000 employees performing various jobs for various employers at various West Coast ports.

These 2005 changes spawned over a decade of litigation. The Machinists charged that Pacific Crane had committed unfair labor practices by refusing to bargain with it and by

recognizing ILWU as the mechanics' bargaining representative. Likewise, the Machinists charged that ILWU had committed unfair labor practices by accepting the recognition and by applying its collective-bargaining agreement to the mechanics. The NLRB agreed with the Machinists on both points. *PCMC/Pac. Crane Maint. Co.*, 359 N.L.R.B. 1206 (2013) (*Pacific Crane I*). The Board then vacated its decision on procedural grounds, but later reached the same conclusion. *PCMC/Pac. Crane Maint. Co.*, 362 N.L.R.B. 988 (2015) (*Pacific Crane II*). After the Machinists settled their claims against Pacific Crane, we upheld the Board's decision and enforced it against ILWU. *Int'l Longshore & Warehouse Union v. NLRB*, 890 F.3d 1100 (D.C. Cir. 2018) (*Pacific Crane III*). In doing so, we relied "heavily" on a stipulation that Pacific Marine and Pacific Crane, which were affiliated companies, should be treated as a single employer. *Id.* at 1110.

B

This case involves a third employer—Ports America Outer Harbor—which came into the picture as the *Pacific Crane* litigation unfolded. In 2010, Ports America acquired control of Oakland berths 20–24 from Maersk. As Maersk had done, Ports America used Pacific Crane to provide maintenance and repair services at those berths. Ports America then acquired berths 25–26 from the Transbay Container Terminal. Ports America expanded its service contract with Pacific Crane to cover these berths as well.

In 2013, Ports America decided to bring its maintenance and repair operations in-house. When its contract with Pacific Crane expired, Ports America hired most of the mechanics who previously had been working for Pacific Crane. In doing so, Ports America refused to bargain with the Machinists and

instead recognized ILWU, which continued to apply its collective-bargaining agreement to the mechanics.

The Machinists charged Ports America and ILWU with various unfair labor practices. They alleged that Ports America committed unfair labor practices by failing to bargain with them and by recognizing ILWU as the mechanics' bargaining representative. Further, they alleged that ILWU committed unfair labor practices by accepting the recognition and by applying its collective-bargaining agreement to the mechanics. All these allegations rested on one central claim—that Ports America had succeeded to Pacific Crane's duty to bargain with the Machinists.

An administrative law judge agreed with the Machinists. She reasoned that from 2005 to 2013, Pacific Crane had a continuing obligation to recognize and bargain with the Machinists. *Ports Am. Outer Harbor, LLC*, 366 N.L.R.B. No. 76, at 10–12 (May 2, 2018) (*Ports America*) (reprinting ALJ recommendation). She then concluded that Ports America succeeded to that obligation under *Burns*, in part by refusing to consider any counterarguments "built on unremedied unfair labor practices" committed by Pacific Crane before 2013. *Id.* at 14. In 2018, the Board substantially affirmed the ALJ's decision on similar reasoning. *See id.* at 3–4 & nn. 9–10.

While the proceeding was still pending before the ALJ, Ports America filed for bankruptcy, so the Machinists added new claims against MTC Holdings, another terminal services company, which the Machinists alleged was a single employer with Ports America. The Machinists then reached a partial settlement covering all their claims against MTC Holdings and their non-*Burns* claims against Ports America. Under the settlement, Ports America and MTC Holdings agreed to pay the Machinists $3 million for distribution to the mechanics. In

August 2016, the ALJ approved the settlement and dismissed MTC Holdings from the case. ILWU objected to the settlement and sought reconsideration. In September 2016, the ALJ affirmed her August order. In November 2016, the Board denied ILWU's appeal from the settlement approval.

ILWU now seeks our review of the NLRB's merits order and its order approving the partial settlement. The NLRB seeks enforcement of the merits order. The Machinists have intervened in support of the Board. Ports America, which has ceased operations, did not appear before this Court.

II

We first consider the Board's ruling that ILWU committed unfair labor practices by accepting recognition as the mechanics' bargaining representative in 2013 and by applying its collective-bargaining agreement to them. ILWU argues that the Board arbitrarily refused to consider its arguments that the past bargaining unit was no longer appropriate. We agree.

Our review of NLRB decisions is deferential but not toothless. Among other things, we must consider whether the Board's findings of fact are supported by substantial evidence, 29 U.S.C. § 160(f), and whether its reasoning is arbitrary and capricious, 5 U.S.C. § 706(2)(A). For the latter, the question is whether the agency "examined the relevant considerations and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *FERC v. Elec. Power Supply Ass'n*, 136 S. Ct. 760, 782 (2016) (cleaned up). "[A]n agency's unexplained departure from precedent is arbitrary and capricious." *ABM Onsite Servs.—West, Inc. v. NLRB*, 849 F.3d 1137, 1142 (D.C. Cir. 2017). So too is an order resting on "clearly distinguishable precedent." *Exxel/Atmos, Inc. v. NLRB*, 147 F.3d 972, 976 (D.C. Cir. 1998).

Section 7 of the National Labor Relations Act guarantees the right of employees "to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Section 8(a) prohibits employers from engaging in unfair labor practices, which include interfering with collective bargaining, *id.* § 158(a)(1); supporting a union, *id.* § 158(a)(2); and refusing to bargain with a union that enjoys majority support, *id.* § 158(a)(5). Section 8(b) prohibits unions from engaging in unfair labor practices, which include restraining collective bargaining by employees, *id.* § 158(b)(1)(A), and causing an employer to discriminate against an employee, *id.* § 158(b)(2).

The unfair labor practices at issue follow from a premise that Ports America had a duty to bargain with the Machinists when it insourced the Oakland maintenance and repair work in 2013. If so, then its failure to bargain with the Machinists violated sections 8(a)(1) and (5), and its recognizing ILWU violated sections 8(a)(1) and (2). Likewise, ILWU violated section 8(b)(1)(A) by accepting the recognition, and section 8(b)(2) by applying its collective-bargaining agreement to the mechanics. ILWU does not dispute that these conclusions follow from the premise.

In finding that Ports America had a duty to bargain with the Machinists, the Board reasoned in two steps. First, Pacific Crane had such a duty. We previously held that Pacific Crane had this duty as of 2005, *Pacific Crane III*, 890 F.3d at 1107–13, and the Board held that it continued through 2013, *Ports America*, 366 N.L.R.B. No. 76, at 2–4. Second, Ports America succeeded to Pacific Crane's bargaining obligation when it hired the mechanics. In reaching this conclusion, the Board summarized the test for successorship as follows:

> An employer is a successor employer obligated to recognize and bargain with the union representing the

predecessor's employees when (1) the successor acquires, and continues in substantially unchanged form, the business of a unionized predecessor (the "substantial continuity" requirement); (2) the successor hires, as a majority of its workforce at the acquired facility, union-represented former employees of the predecessor (the "workforce majority" requirement); and (3) the unit remains appropriate for collective bargaining under the successor's operations.

*Id*. at 2; *see Burns*, 406 U.S. at 277–81. ILWU accepts this formulation of the governing legal test.

Before the Board, ILWU sought to raise three arguments why the historic bargaining unit was no longer appropriate when Ports America hired the mechanics in 2013. First, the historic bargaining unit had accreted into ILWU's larger, coast-wide bargaining unit—in other words, the historic unit had lost its separate identity and acquired an "overwhelming community of interest" with the ILWU unit, *see Dean Transp., Inc. v. NLRB*, 551 F.3d 1055, 1067 (D.C. Cir. 2009) (quotation marks omitted). Second, a majority of mechanics in the historic unit by then supported ILWU, not the Machinists. Third, Ports America had at least a good-faith doubt whether a majority of the unit still supported the Machinists.[†]

---

[†] As of 2005, the recognized bargaining unit encompassed non-crane mechanics employed by Pacific Marine in Oakland and Tacoma. *See Pacific Crane III*, 890 F.3d at 1103–04 & n.2. In this case, the Board expanded the historic unit to include mechanics at Oakland berths 25 and 26, which Ports America took over in 2010, and contracted it to exclude mechanics in Tacoma, who are not employed by Ports America. *See Ports America*, 366 N.L.R.B. No.

The Board declined to consider ILWU's arguments because they invoked changes that were "a direct result of the *predecessor* employers' unlawful assistance to and recognition of the ILWU." 366 N.L.R.B. No. 76, at 3 (emphasis added); *see also id.* at 3–4 nn. 9–10. In other words, if the historic bargaining unit had become inappropriate by the time Ports America took over, it was only because Pacific Crane had improperly recognized ILWU, and had failed to recognize the Machinists, during the eight prior years.

To justify its ruling, the Board invoked our decision in *Pacific Crane III*. But that case does not address whether an *incoming* employer may contest successorship obligations by citing workplace changes caused by unfair labor practices of the *outgoing* employer. *Pacific Crane III* involved no successorship issue because the parties there had stipulated that the outgoing Pacific Mutual and the incoming Pacific Crane, which were affiliated companies, should be treated as a single employer. *See* 890 F.3d at 1110. It was thus undisputed that Pacific Crane, when it took over in 2005, succeeded to the bargaining obligations of Pacific Mutual. Pacific Crane separately argued that the historic Machinists unit had accreted into the larger ILWU unit because of changes that occurred *after* 2005. In response, the Board held that Pacific Crane could not seek to benefit from *its own* unfair labor practices in recognizing ILWU and failing to recognize the Machinists. 359 N.L.R.B. at 1211. Likewise, we explained that "the Board should ignore any impermissible changes made unilaterally by the employer," because "to hold otherwise would allow the

---

76, at 3. ILWU contends that the historic unit was absorbed into its unit, but does not otherwise challenge the Board's adjustments to the historic unit.

employer to benefit from its own unlawful conduct." 890 F.3d at 1111 (cleaned up).[‡]

We can imagine reasonable arguments either way on the question whether a successor employer should be barred from citing changes caused by the unfair labor practices of a predecessor. Perhaps current employee choices should be given effect, regardless of whether a former employer committed unfair labor practices. Or, perhaps the need to remedy past unfair labor practices is paramount. The Board simply did not engage these questions. Instead, it relied on inapposite precedent, as it virtually conceded at oral argument. Oral Arg. 22:50–56 ("there is no clear case on point"); *id.* 25:22–24 ("there are no cases governing"). That was arbitrary. *See Exxel/Atmos*, 147 F.3d at 976.

Before this Court, the Board presses an alternative theory that Ports America could not have claimed any good-faith doubt that a majority of workers in the unit supported the Machinists. According to the Board, this is so because Ports America knew of Pacific Crane's unremedied unfair labor practices. *See Proxy Commc'ns*, 290 N.L.R.B. 540, 542 (1988), *enforced*, 873 F.2d 552 (2d Cir. 1989); *Bay Diner*, 279 N.L.R.B. 538, 546 (1986); *Silver Spur Casino*, 270 N.L.R.B. 1067, 1074 (1984). But neither the ALJ nor the Board articulated this rationale below, and neither made findings on whether Ports America knew of Pacific Crane's unfair labor

---

[‡] The Board in this case also cited *Pacific Telephone & Telegraph Co.*, 80 N.L.R.B. 107 (1948), but it too has nothing to do with successorship. There, the Board held that a union could not seek a unit determination reflecting assistance that the employer had unlawfully provided to it. *Id.* at 111–12. The case involved no question of when bargaining obligations flow from a predecessor to a successor.

practices in sufficient time. ILWU suggests no, because Ports America had signed its contracts and made its hiring decisions before the Board decided *Pacific Crane I*. The Board suggests yes, because *Pacific Crane I* was decided before Ports America took over the maintenance and repair work. Because the Board did not address these issues below, much less make the findings necessary to resolve them, we cannot uphold its rejection of the good-faith defense on this ground. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

At oral argument, we asked the Board about another possible rationale for upholding its order: Even if Ports America could seek to benefit from the unfair labor practices of Pacific Crane, ILWU could not seek to benefit from its own past unfair labor practices. The Board wisely declined to press that rationale here. In the proceedings below, the Board pegged ILWU's liability entirely to the proposition that Ports America was a *Burns* successor and had violated its bargaining obligations as such. *See Ports America*, 366 N.L.R.B. No. 76, at 2. Under *Chenery*, we thus cannot uphold the Board's order on the theory that ILWU committed unfair labor practices even if Ports America did not.

As this analysis should make clear, our ruling is narrow. We hold only that the Board did not engage in reasoned decisionmaking in the order under review. On remand, the Board remains free to consider the various open issues and arguments in this case, unencumbered by its invocation of inapposite precedent.[§]

---

[§] The Board ordered Ports America to bargain with the Machinists if it resumed operations, and it ordered ILWU to reimburse fees and dues paid by the mechanics. *Ports America*, 366 N.L.R.B. No. 76, at 6. Because we have set aside the underlying

III

ILWU also seeks review of the Board's order refusing to set aside the partial settlement among the Machinists, Ports America, and MTC Holdings. The Machinists contend that we lack jurisdiction to review that order for two reasons. First, ILWU lacks Article III standing to challenge a settlement of claims made against other parties, which in no way impaired ILWU's ability to defend the claims made against it. Second, the intervening distribution of the settlement funds mooted ILWU's objections to the settlement. We must consider both jurisdictional objections before reaching the merits, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), but we may do so in either order, *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). We begin—and end—with the question of mootness.

ILWU does not respond to the Machinists' contention that disbursement of the settlement funds mooted ILWU's challenge. By this silence, ILWU has forfeited any objection to mootness. "Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction." *Scenic Am., Inc. v. DOT*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016). "[T]he ordinary rules of forfeiture apply" to a claim that we have jurisdiction, *Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019), so ILWU's "failing to respond" to an argument that we lack jurisdiction forfeited any counterargument that we have it, *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 618 (D.C. Cir. 2017); *see, e.g.*, *Reid v. Hurwitz*, 920 F.3d 828, 833 n.4 (D.C. Cir. 2019). This is consistent with how ordinary forfeiture rules work in other

liability determinations, we need not consider ILWU's challenge to these two remedies. *See Erie Brush & Mfg. Corp. v. NLRB*, 700 F.3d 17, 19 (D.C. Cir. 2012).

contexts where one party has raised an argument and the other has "offered nothing in opposition." *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997); *see Clifton Power Corp. v. FERC*, 88 F.3d 1258, 1267 (D.C. Cir. 1996).

Because ILWU forfeited any argument that this case is not moot, we dismiss its petition to review the Board's order accepting the partial settlement.

IV

We grant the petition for review of the Board's final order, set aside that order, deny the Board's cross-application for enforcement, and remand for further proceedings consistent with this opinion. We dismiss as moot the petition for review of the Board's order refusing to set aside the partial settlement.

*So ordered.*