# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 20-1076

September Term, 2020

FILED ON: APRIL 6, 2021

ST. JAMES MEDICAL GROUP,
          PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
          RESPONDENT

Consolidated with 20-1153

On Petition for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

Before: SRINIVASAN, *Chief Judge*, MILLETT, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

## **J U D G M E N T**

The Court has considered this appeal on the administrative record, the parties' briefs, and oral argument. The Court has accorded the issues full consideration and has determined they do not warrant a published opinion. *See* FED. R. APP. P. 36; D.C. CIR. R. 36(d). It is

**ORDERED** that the petition for review be **DENIED** and the cross-application for enforcement be **GRANTED**.

St. James Medical Group petitions for review of a National Labor Relations Board decision that it committed an unfair labor practice by refusing to bargain with a union representing a Board-certified unit of registered nurses. 369 N.L.R.B. No. 29 (2020). St. James challenges the Board's certification of that unit; the Board cross-petitions for enforcement of its order. We deny the petition and grant the Board's cross-application for enforcement.

The standard is familiar: the Board is not required to pick the most appropriate unit — only an appropriate one. *Dean Transp., Inc. v. NLRB*, 551 F.3d 1055, 1063 (D.C. Cir. 2009) (quoting *Serramonte Oldsmobile, Inc. v. NLRB*, 86 F.3d 227, 236 (D.C. Cir. 1996)). We review the Board's findings of fact for substantial evidence and its reasoning for arbitrariness or capriciousness. *Int'l Longshore & Warehouse Union v. NLRB*, 971 F.3d 356, 360 (D.C. Cir. 2020).

To determine appropriateness, "the Board applies what it calls the community-of-interest standard." *Davidson Hotel Co. v. NLRB*, 977 F.3d 1289, 1291 (D.C. Cir. 2020) (citing *PCC Structurals, Inc.*, 365 N.L.R.B. No. 160, *6–7 (2017)). The Board proceeds in three steps. "First, the Board determines whether the employees in the petitioned-for unit share a community of interest." *Id.* "Second, the Board determines whether the proposed unit shares a community of interest sufficiently distinct from employees excluded from the proposed unit to warrant a separate appropriate unit." *Id.* (quoting *PCC Structurals, Inc.*, 365 N.L.R.B. at *9) (internal quotation marks and brackets omitted). And third, the Board considers industry-specific precedent. *The Boeing Co.*, 368 N.L.R.B. No. 67, *3 (2019).

St. James agrees that the registered nurses share a community of interest. Rather, it alleges that the Regional Director inadequately analyzed whether the nurses' interests are sufficiently distinct from those of the excluded advanced-practice practitioners[1] and that the Director erred in applying industry-specific precedent. We disagree.

First, the Regional Director adequately compared the nurses' interests with those of the practitioners. After setting out the relevant facts, the Regional Director discussed "important and significant distinguishing features[.]" J.A. 216. The Regional Director stressed that the practitioners "undergo specialized training and must maintain unique licensing." *Id.* St. James argues that this is not a meaningful difference because the nurses also have specialized training. That misses the point: the nurses have a distinct role from the excluded practitioners. The practitioners "enjoy considerably more independence" to direct care — for example, by "ordering diagnostic tests" and "prescribing medications[.]" *Id.* The nurses do not.

The differences continue. As the Regional Director noted, the nurses "differ in important terms and conditions of employment[.]" *Id.* The nurses are paid hourly, whereas the practitioners are salaried. The nurses maintain separate supervision. And the nurses do not interchange with the practitioners. While the nurses and the advanced-practice practitioners share some commonalities, the Regional Director acted within his discretion in concluding that the nurses' interests were sufficiently distinct to outweigh the few commonalities.

Second, the Regional Director engaged with industry precedent for non-acute care facilities. *Park Manor Care Center, Inc.*, 305 N.L.R.B. 872, 875 (1991), instructs the Board to consider its healthcare-industry precedent. Here, the Director nestled this case amongst similar Board decisions "where registered nurses constituted a sizable homogenous grouping of professionals, whose specialized training and licensure requirements clearly prevent other professions from performing their work[.]" J.A. 216 (citing *S. Hills Health Sys.*, 330 N.L.R.B. 653 (2000); *Marian Manor for the Aged & Infirm, Inc.*, 333 N.L.R.B. 1084, 1094 (2001); *Charter Hosp. of St. Louis, Inc.*, 313 N.L.R.B. 951, 954

---

[1] St. James defined advanced-practice practitioners as nurse practitioners and physician assistants. For simplicity, we will do the same. St. James also argued that the unit should include two social workers and a behavioral health specialist, but the characteristics of those two positions are even more distinct from those of the registered nurses.

(1994); *Holliswood Hosp.*, 312 N.L.R.B. 1185 (1993); *McLean Hosp. Corp.*, 311 N.L.R.B. 1100 (1993)). The Regional Director did not abuse his discretion in doing so.[2]

For these reasons, we deny the petition for review and grant the Board's cross-application for enforcement. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Michael C. McGrail
Deputy Clerk

---

[2] We also reject St. James's additional arguments. The record does not support St. James's contentions that the Regional Director made factual errors or acted arbitrarily with respect to unit proliferation or residual unit concerns.