# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 9, 2024          Decided June 17, 2025

No. 23-5251

AMMAR AL-BALUCHI, ALSO KNOWN AS ALI ABDUL AZIZ ALI,
APPELLANT

v.

PETE HEGSETH, SECRETARY OF DEFENSE, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-02083)

---

*Alka Pradhan* argued the cause and filed the briefs for appellant. With her on the briefs was *James G. Connell, III*.

*Tara J. Plochocki* was on the brief for *amicus curiae* September 11th Families for Peaceful Tomorrows in support of appellant.

*Benjamin M. Shultz*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Sharon Swingle*, Attorney. *Michael Shih*, Attorney, entered an appearance.

Before: PILLARD, WILKINS, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*:  Ammar al-Baluchi has been detained at the U.S. naval base in Guantánamo Bay, Cuba, for nearly twenty years.  He asked the district court overseeing his habeas corpus proceedings to compel the government to convene a Mixed Medical Commission to assess his eligibility for repatriation.  After the district court denied relief, al-Baluchi immediately appealed.  Because al-Baluchi has not shown that we have jurisdiction to review the district court's nonfinal order, we dismiss the appeal.

**I**

**A**

In setting out rules for the treatment of prisoners of war, the Third Geneva Convention provides that parties to a conflict must generally "send back to their own country" any "seriously wounded and seriously sick prisoners of war."  Geneva Convention (III) Relative to the Treatment of Prisoners of War art. 109, Aug. 12, 1949, 6 U.S.T. 3316, T.I.A.S. No. 3364.  To facilitate this process, the Convention calls for the appointment of "Mixed Medical Commissions" to assess whether a prisoner of war is eligible for repatriation.  *Id.* art. 112.

Domestic law incorporates these protections.  In 1997, the Secretary of the Army promulgated Army Regulation 190-8 (AR 190-8), which "implements international law" relating to detainees in the custody of the U.S. Armed Forces.  AR 190-8 § 1-1(b).  One of the "principal treaties" that the regulation implements is the Third Geneva Convention.  *Id.* § 1-1(b)(3).  The provisions of the Convention "take precedence" to the

extent they conflict with or deviate from the regulation. *Id.* § 1-1(b)(4).

Consistent with the Convention, AR 190-8 provides that "[s]ick and wounded prisoners" will be evaluated for "repatriation or accommodation in a neutral country during hostilities." *Id.* § 3-12(a). A "Mixed Medical Commission," the regulation says, will "[d]etermine those cases eligible for repatriation or hospitalization in a neutral country." *Id.* § 3-12(c)(3).

**B**

Al-Baluchi is a Pakistani national who has been detained at the U.S. naval base in Guantánamo Bay since 2006. The United States maintains that al-Baluchi supported and facilitated the September 11, 2001, attacks as a senior member of al-Qaeda.

In 2008, al-Baluchi petitioned for a writ of habeas corpus in federal district court. *See* 28 U.S.C. § 2241. Three years later, with his habeas petition still pending, the government convened a military commission to try al-Baluchi for terrorism, murder in violation of the law of war, and other offenses. The district court then granted the government's request to stay al-Baluchi's habeas case until his commission proceedings conclude. Al-Baluchi's trial has yet to occur, and his habeas petition remains stayed.

In 2022, al-Baluchi moved to compel the government to convene a Mixed Medical Commission under AR 190-8. Al-Baluchi claims that he suffered years of torture at the hands of the CIA before his transfer to the Guantánamo base. He asserts that this extreme mistreatment, combined with his lengthy detention at Guantánamo Bay, have caused him to sustain brain injuries and other serious neurological issues that qualify him for repatriation.

4

After temporarily lifting the stay to consider al-Baluchi's motion, the district court denied his request. *See Al-Baluchi v. Austin*, 691 F. Supp. 3d 133, 141, 145 (D.D.C. 2023). The district court determined that a detainee captured during a noninternational armed conflict, like al-Baluchi, is not entitled to a Mixed Medical Commission examination under the Third Geneva Convention or AR 190-8. *Id.* at 144–47. Al-Baluchi immediately appealed the district court's order.

**II**

Before considering the merits of al-Baluchi's appeal, we must first assess whether we have jurisdiction to do so. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Courts of appeals generally have authority to review only "final decisions" of district courts. 28 U.S.C. § 1291. This rule prevents a party from taking an appeal until the district court enters an order that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). As al-Baluchi accepts, no such order has been entered in the litigation below.

Al-Baluchi argues instead that two exceptions to the final-order rule apply. First, he claims that the district court's order had the "practical effect" of denying injunctive relief, threatens "serious, perhaps irreparable, consequence" if not immediately reviewed, and is thus immediately appealable under 28 U.S.C. § 1292(a)(1). *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981). Second, he claims that the order resolves an important issue separate from the merits, is effectively unreviewable on appeal from a final judgment, and thus must be treated as final under the collateral-order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Both exceptions demand a showing of serious or irreparable harm requiring immediate review. *See I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d

21, 25 n.5 (D.C. Cir. 1986) (explaining that "[t]he requisite showing of irreparable harm" under the collateral-order doctrine "is similar to that required in cases involving interlocutory injunctive orders").[1]

Al-Baluchi offers only one theory of serious or irreparable harm: He claims that meaningful medical treatment is unavailable to him at Guantánamo Bay and that a favorable determination by a Mixed Medical Commission would compel his prompt repatriation to a jurisdiction capable of providing proper medical care. An interlocutory appeal, on his view, could be the difference between repatriation now and repatriation after his military-commission proceedings conclude.

For that assertion, al-Baluchi relies on the commentary to Article 112 of the Third Geneva Convention, the provision describing the role and authority of Mixed Medical Commissions. Article 112 itself states, in relevant part, that "Mixed Medical Commissions shall be appointed to examine sick and wounded prisoners of war, and to make all appropriate decisions regarding them." The commentary then explains that the decisions of Mixed Medical Commissions "are final" and that, as a general matter, the "Detaining Power must carry those decisions out within three months." Int'l Comm. of the

---

[1] Al-Baluchi also briefly argues that the district court's order is immediately appealable under 28 U.S.C. § 1292(a)(1) because it denied injunctive relief "in terms." Appellant's Brief 20. We disagree with the premise. The district court's order did not "by its terms" deny an injunction, because al-Baluchi never made a "specific request" for an injunction. *See Salazar ex rel. Salazar v. District of Columbia*, 671 F.3d 1258, 1261–62 (D.C. Cir. 2012). Just the opposite: He explicitly stated below that his request for a Mixed Medical Commission was "not a request for injunctive relief." Petitioner's Reply to Respondents' Mem. Opp. Mot. to Lift Stay and Compel Examination at 4, Dkt. No. 236.

Red Cross, *Commentary on the Third Geneva Convention* §§ 4364–65 (2020) (2020 Commentary). Though not binding, the commentary is "relevant" in interpreting the Convention's provisions. *Hamdan v. Rumsfeld*, 548 U.S. 557, 619 n.48 (2006).

The government counters that, even if a Mixed Medical Commission were to find al-Baluchi eligible for repatriation, nothing would require the government to repatriate him immediately. Under both the Convention and AR 190-8, the government would still retain the discretion to detain al-Baluchi while his military-commission proceedings are ongoing.

We agree with the government. Article 115, paragraph 2 of the Third Geneva Convention, which AR 190-8 incorporates, makes the government's discretion clear. "Prisoners of war," it says, "detained in connection with a judicial prosecution or conviction and who are designated for repatriation or accommodation in a neutral country, may benefit by such measures before the end of the proceedings or the completion of the punishment, if the Detaining Power consents." As a result, even if al-Baluchi were "designated for repatriation" by a Mixed Medical Commission, he may "benefit" from that determination "before the end of the proceedings or the completion of the punishment" only "if the Detaining Power consents."[2]

---

[2] The government disputes that al-Baluchi qualifies as a "prisoner of war" under any relevant source of law. We assume that he does so qualify only for purposes of determining our jurisdiction, because al-Baluchi's theory of the merits relies on the same assumption. *See Ctr. for Regul. Reasonableness v. EPA*, 849 F.3d 453, 454 n.1 (D.C. Cir. 2017) (explaining that we "generally will assume the merits as the plaintiff or petitioner pleads them" when "determining jurisdiction").

The 1960 commentary to Article 115 confirms this view. It says that "[i]t is for the Detaining Power to decide whether a wounded or sick prisoner of war detained in connection with a judicial prosecution or conviction shall be allowed to benefit by repatriation or accommodation." Int'l Comm. of the Red Cross, *Commentary: Geneva Convention (III) Relative to the Treatment of Prisoners of War* 536 (Jean S. Pictet ed., A.P. de Henry trans., 1960); *see also id.* (envisioning that a "prisoner of war whose state of health qualifies him for repatriation . . . might not be repatriated . . . during the judicial proceedings"). And the commentary expressly contemplates—consistent with Article 115's text—that this discretion overrides the detaining power's obligation to otherwise carry out repatriation determinations made by a Mixed Medical Commission. When a detaining country notifies the other side in the conflict that a prisoner of war has been "kept back," the commentary explains, it should "indicate that action on the decision by the Mixed Medical Commission[] . . . has been postponed." *Id.* at 537 n.1.

The 2020 commentary provides the same guidance. It reiterates: "The repatriation or accommodation in a neutral country of convicted and detained prisoners of war who are wounded or sick is conditioned on the consent of the Detaining Power. Accordingly, the Detaining Power may keep the prisoners of war detained for the duration of the judicial proceedings or until they have served their sentences." 2020 Commentary ¶ 4402.

Al-Baluchi offers no rebuttal to these authorities in his briefs. Indeed, in the district court, al-Baluchi seemed to accept that Article 115, paragraph 2 applied, and that the government could delay his repatriation until the end of his military-commission proceedings despite a favorable Mixed Medical Commission determination. *See* Petitioner's Reply to Respondents' Mem. Opp. Mot. to Lift Stay and Compel

Examination at 17 n.78, Dkt. No. 236 ("Art. 115(2) introduces the sole element of discretion for the United States: if [a Mixed Medical Commission] finds Petitioner eligible for medical release, the 'Detaining Power' must consent to such release while he faces judicial proceedings or punishment.").  At oral argument, al-Baluchi appeared to dispute for the first time that he is subject to a "judicial prosecution" within the meaning of Article 115.  *See* Oral Arg. Tr. 11–12.  That contention came too late, especially given the government's clear reliance on Article 115, paragraph 2 in its brief and al-Baluchi's own statements in the district court.  *See Ark Las Vegas Rest. Corp. v. NLRB*, 334 F.3d 99, 108 n.4 (D.C. Cir. 2003) (declining to consider argument not raised until oral argument).

We do not address whether we would have appellate jurisdiction under a different theory of irreparable injury.  Al-Baluchi does not argue, for instance, that a favorable repatriation determination by a Mixed Medical Commission could prompt the government to consent to his repatriation even while his prosecution is pending.  Nor does al-Baluchi offer any other theory as to how immediate review (and the ability to undergo examination before final judgment instead of after) might accelerate his potential repatriation.  And although al-Baluchi suggested at oral argument that a Mixed Medical Commission could also require adjustments to his medical treatment at Guantánamo Bay, he has forfeited this theory by failing to raise it in his briefs.  *See id.*  We therefore have no occasion to reach any of these potential grounds for jurisdiction.  *See Int'l Longshore & Warehouse Union v. NLRB*, 971 F.3d 356, 363 (D.C. Cir. 2020) (applying ordinary rules of forfeiture to claims that we have jurisdiction).

As this case comes to us, the narrow, dispositive question is whether a Mixed Medical Commission may compel the government to repatriate al-Baluchi before the completion of

9

his prosecution.  Because the answer is no, al-Baluchi's only theory of appellate jurisdiction fails.

**III**

The appeal is dismissed for lack of jurisdiction.

*So ordered.*